## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GOODY'S FAMILY CLOTHING, | ) | Case No. 08-11133(CSS) |
| INC., et al., | ) | Jointly Administered |
| | ) | |
| Debtors. | ) | Re Docket Nos. 207, 248 and 262 |
| | ) | |

### OPINION[1]

Gregg M. Galardi (Argued)
Marion M. Quirk
Skadden, Arps, Slate, Meagher
 & Flom, LLP
P.O. Box 636
Wilmington, Delaware  19899

Counsel for Debtors
and Debtors in Possession

Regina A. Iorii (Argued)
Werb & Sullivan
300 Delaware Avenue
13th Floor
P.O. Box 25046
Wilmington, Delaware  19899

Counsel for Mountaineer
Property Co. II, LLC

Charlene D. Davis (Argued)
Daniel A. O'Brien
Bayard, P.A.
P.O. Box 25130
Wilmington, Delaware  19899
       - and -
Eric J. Snyder
Siller Wilk, LLP
675 Third Avenue
New York, New York 10017

Counsel for Bernard Court, LLC
Cookeville Retail Holdings, LLC
and Owensboro Town Center

Mark T. Hurford (Argued)
Kenneth L. Dorsey
Campbell & Levine, LLC
800 N. King Street, Suite 300
Wilmington, Delaware  19899
       - and -
Richard L. Ferrell
Taft Stettinius & Hollister, LLP
425 Walnut Street, Suite 1800
Cincinnati, Ohio  45202-3957

Counsel for Libby Westmark
Enterprise, LLC and Libby Cross
Station Enterprises, LLC

Dated: August 26, 2008

Sontchi, J. _____

---

[1] This Opinion constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

## INTRODUCTION

"Notwithstanding" is one of the most frequently used and misunderstood words in the legal vocabulary. Its meaning is at the heart of the dispute before the Court. Specifically, can the Court allow an administrative claim for unpaid post-petition rent on behalf of a commercial landlord under section 503(b)(1) of the Bankruptcy Code as an actual, necessary cost and expense of preserving the estate? Or, rather, is section 365(d)(3), which requires the trustee to "timely perform all the obligations of the debtor . . . arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, *notwithstanding section 503(b)(1),*" and, in the event of an assumption, section 365(b)(1)(A), the *sole* bases for allowance of an administrative claim for post-petition rent?

The Court finds that because "notwithstanding" means "in spite of," sections 365(d)(3) and 365(b)(1)(A) provide for the allowance and timely payment of administrative claims for post-petition rent regardless of section 503(b)(1). These sections, however, are not the sole refuge for unpaid landlords. The Court may allow an administrative claim for unpaid post-petition rent on behalf of a landlord, provided that the claim is for an actual, necessary cost and expense of preserving the estate. The amount of the claim is the fair market value of the premises, and that value is presumed to be the rent due under the lease unless evidence is presented to the contrary.

An administrative expense claim under section 503(b)(1) for post-petition rent, however, need not be timely paid under section 365(d)(3).  Rather, the timing of the payment is in the Court's discretion.

In this case, the moving landlords have an allowed administrative claim under section 503(b)(1) of the Bankruptcy Code for unpaid post-petition rent in the amount due under the applicable lease.  The Court will deny, however, the landlords' request for immediate payment of the allowed administrative claims.

## JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. Venue of this proceeding is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B), (M) and (O).

## STATEMENT OF FACTS

On June 9, 2008 (the "Petition Date"), Goody's Family Clothing, Inc. and its affiliates (collectively, the "Debtors") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.  The Debtors are a moderately priced family apparel retailer, which, as of the Petition Date, operated approximately 350 stores in small to midsize markets throughout the United States.[2]

The Debtors have continued to operate their business and occupy certain rental properties as debtors in possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code.  Among the rental properties currently occupied by the

---

[2] Since the Petition Date the Debtors have closed approximately 70 stores with Court approval.

Debtors are those leased from (i) Libby Westmark Enterprises, LLC and Libby Cross Station Enterprises, LLC (collectively, "Libby"); (ii) Bernard Court, LLC, Cookeville Retail Holdings, LLC, and Owensboro Towne Center, LLC (collectively, "Owensboro"); and (iii) Mountaineer Property Co. ("Mountaineer," collectively with Libby and Owensboro, the "Landlords").  The Debtors have unexpired leases of nonresidential real property (the "Leases") with the Landlords and currently occupy the premises under each of the Leases.

The Debtors did not pay the rent under the Leases due on June 1, 2008.[3] Nor have the Debtors paid rent for the post-petition period from the Petition Date through June 30, 2008.  The Landlords and the Debtors have stipulated that the unpaid "stub rent" under each of the Leases for the 21-day post-petition period through June 30, 2008, is:

- Libby - $22,491;

- Owensboro – $49,315; and

- Mountaineer - $18,700.

Each of the Landlords filed a motion for allowance and immediate payment of the applicable stub rent.  The Debtors filed objections to each of the motions, arguing that:

a.      allowance of an administrative claim for stub rent and timely payment thereof is not available under section 365(d)(3) because the obligation to pay the stub rent did not arise post-petition;

---

[3] The Debtors timely paid the rent due under the Leases on July 1, 2008.

b.    allowance of an administrative claim for stub rent and payment thereof is not available under section 503(b)(1) because section 365(d)(3) and, in the event of an assumption, section 365(b)(1)(A) are the *sole* bases for awarding an administrative claim to a landlord for post-petition rent; and

c.    assuming, *arguendo*, that allowance of an administrative claim for stub rent and payment thereof are available under section 503(b)(1), the Court should deny the Landlord's request for same because:

(i)    it would be premature for the Court allow and require immediate payment of an administrative claim for stub rent prior to the Court entering an order authorizing assumption or rejection of the applicable lease;

(ii)    the Landlords have failed to meet their burden of establishing that the stub rent is an actual, necessary cost and expense of preserving the Debtors' estates, and

(iii)    the Landlords have failed to establish sufficient cause to compel the Debtors to pay the asserted administrative claim at this time.

On July 24, 2008, the Court convened an evidentiary hearing on the motions for allowance and immediate payment of the stub rent. This matter is now ripe for decision.

## LEGAL DISCUSSION

### I. Statutory Interpretation

The Supreme Court has often reiterated that the starting point of statutory analysis is the plain meaning of the text of the statute, recently observing that "when the statute's language is plain, the sole function of the courts - at least where the disposition required by the text is not absurd - is to enforce it according to its terms."[4] Additionally, the Supreme Court has repeatedly stated

---

[4] *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) (quoting *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 240 (1989)) (internal citations omitted). *See also Caminetti v. United States*, 242 U.S. 470, 485 (1917) ("It is elementary that the meaning of a statute

that "Congress says in a statute what it means and means in a statute what it says there."[5]

## II.  Section 365(d)(3) Is Inapplicable To The Landlords' Request For Allowance And Payment Of Stub Rent.

Section 365(d)(3) of the Bankruptcy Code provides, in pertinent part, that the trustee must "timely perform all the obligations of the debtor . . . arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1)."[6]   It is well settled in this Circuit that, in the context of section 365(d)(3), the plain meaning of "obligations" is "something that one is legally required to perform under the terms of the lease."[7]   Moreover, an obligation only arises when a party becomes legally obligated to perform it.[8]

In this case, under each of the Leases, the rent is due in advance on the first of each month.  Thus, the June rent was due on June 1st, 9 days before the Petition Date.   Under the plain meaning of section 365(d)(3), the June rent

---

must, in the first instance, be sought in the language in which the act is framed, and if that is plain, and if the law is within the constitutional authority of the lawmaking body which passed it, the sole function of the courts is to enforce it according to its terms").

[5] *Hartford Underwriters Ins. Co.*, 530 U.S. at 6 (quoting *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 254 (1992)).

[6] 11 U.S.C. § 365(d)(3).

[7] *Centerpoint Properties v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 268 F.3d 205, 209 (3d Cir. 2001).

[8] *Id.*

obligations arose pre-petition and are not administrative expenses under section

365(d)(3).[9]

### III. The Court Can Allow An Administrative Claim On Behalf Of A Landlord For Unpaid Post-Petition Rent Under Section 503(b)(1) Of The Bankruptcy Code As An Actual, Necessary Cost And Expense Of Preserving The Estate

The heart of the dispute before the Court is whether section 365(d)(3) and

365(b)(1)(A) of the Bankruptcy Code are the *sole* bases for the allowance and

payment of an administrative claim to a landlord for stub rent.  Or, rather, can

the Court allow an administrative claim for stub rent under section 503(b)(1) of

the Bankruptcy Code as an actual, necessary cost and expense of preserving the

estate.    The Court finds that, based upon the plain meaning of the statute, the

Court can allow an administrative claim for stub rent under section 503(b)(1).

#### a.    The intersection of sections 365(d)(3), 365(b)(1)(A), and 365(g)(1) with section 503(b)(1).

Section 365(d)(3) requires the trustee to "timely perform all the obligations

of the debtor . . . arising from and after the order for relief under any unexpired

lease of nonresidential real property, until such lease is assumed or rejected,

*notwithstanding section 503(b)(1)*."[10]    The Debtors argue that section 365(d)(3)

specifically renders section 503(b)(1) inapplicable to post-petition obligations

---

[9] *See In re DVI, Inc.*, 308 B.R. 703, 707 (Bankr. D. Del. 2004); *In re ZB Co., Inc.*, 302 B.R. 316, 319 (Bankr. D. Del. 2003);  and *In re HQ Global Holdings, Inc.*, 282 B.R. 169, 172-73 (Bankr. D. Del. 2002). *Compare In re Fleming Companies, Inc.*, 308 B.R. 689, 691-92 (Bankr. D. Del. 2004) (In interpreting section 365(d)(10), which requires the trustee to pay lease payments "arising from or after 60 days after the order for relief under an unexpired lease of personal property ... until such lease is assumed or rejected," the Court applied by analogy the Third Circuit's holding in *In re Montgomery Ward* regarding section 365(d)(3).)

[10] 11 U.S.C. §365(d)(3) (emphasis added).

under any unexpired lease of nonresidential real property and, thus, the Court cannot allow an administrative claim on behalf of a landlord for stub rent under section 503(b)(1).

Section 365(b)(1)(A) provides, in pertinent part, that "[i]f there has been a default in an . . . unexpired lease of the debtor, the trustee may not assume such . . . lease unless, at the time of assumption of such . . . lease, the trustee . . . cures, or provides adequate assurance that the trustee will promptly cure, such default . . ."[11]   In addition, section 365(g)(1) provides that "the rejection of an . . . unexpired lease of the debtor constitutes a breach of such . . . lease . . . if such . . . lease has not been assumed under this section or under a plan confirmed under [chapter 11], immediately before the date of the filing of the petition."[12]

Section 503(b), in turn, provides that "[a]fter notice and a hearing, there shall be allowed administrative expenses."[13]  Those expenses include "the actual, necessary expenses of preserving the estate."[14]

In addition to the Debtors' argument that section 365(d)(3) preempts section 503(b)(1), they argue that whether the Landlords' claim for stub rent may be allowed and paid as an administrative claim depends entirely on whether the Debtors assume or reject the applicable lease.  If the Debtors assume one or more of the Leases, then the Debtors would be obligated to pay the stub rent to cure a

---

[11] 11 U.S.C. §365(b)(1)(A).

[12] 11 U.S.C. §365(g)(1).

[13] 11 U.S.C. §503(b).

[14] 11 U.S.C. §503(b)(1)(A).

default for nonpayment under the applicable lease.[15]   But, if the Debtors reject one or more of the Leases the stub rent may not be entitled to status as an administrative claim as the claim arose pre-petition and rejection makes such claims unsecured.[16]   Thus, section 503(b)(1) must be inapplicable because it conflicts with sections 365(b)(1)(A) and 365(g)(1).

The Landlords counter both these arguments by arguing that sections 365(d)(3) and 503(b)(1) are mutually exclusive and, thus, the Court can allow an administrative claim for stub rent and authorize payment on that claim under section 503(b)(1) as an actual, necessary cost and expense of preserving the estate. The Landlords further rely on a number of cases from this jurisdiction that they assert support their argument.[17]

---

[15] 11 U.S.C. §365(b)(1)(A).

[16] 11 U.S.C. §365(g)(1).

[17] *Zagata Fabricators, Inc. v. Superior Air Prods.*, 893 F.2d 624, 627 (3d Cir. 1990) ("When the creditor involved is a landlord seeking rent for the use and occupancy of real estate . . . the landlord may seek payment as a first priority creditor. There is no question, of course, that the payment of rent for the use and occupancy of real estate ordinarily counts as an 'actual, necessary' cost to which a landlord, as a creditor, is entitled."); *In re Garden Ridge Corp.*, 321 B.R. 669, 674 (Bankr. D. Del. 2005) (Noting that Court previously ordered in a bench ruling "that the Debtors shall pay the contract rent in full because regardless of section [362(d)(3)], some, if not all, of the February 2004 rent will be due under section 503(b)."); *In re DVI, Inc.*, 308 B.R. at 707-08 ("A landlord is entitled to an administrative claim in the amount of the fair market value of the premises when a debtor occupies and uses them post-petition.") (internal citations omitted); *In re Chi-Chi's, Inc.*, 305 B.R. 396, 401 (Bankr. D. Del. 2004) (Agreeing with holding in *In re ZB Co., Inc.*, 302 B.R 316 (Bankr. D. Del. 2003) that where debtors are receiving payment from liquidator for stub rent there is no justification for the debtors not paying the rent owed to the landlords but declining to apply holding because facts them post-petition); *In re ZB Co., Inc.*, 302 B.R at 319 ("That proration of rent is not permitted under section 365(d)(3) does not leave the Landlords without a remedy, however. Section 503(b)(1)(A) grants an allowed administrative claim for 'the actual, necessary costs and expenses of preserving the estate....' Section 503(b)(1)(A) fills the stub period gap created by section 365(d)(3)."); and *In re HQ Global Holdings, Inc.*, 282 B.R. at 173 ("A lessor is generally entitled to an administrative claim under section 503(b) for the fair rental value of the lessor's property actually used by the debtor.") (citations omitted).

### b.    Section 365(d)(3)

The Court rejects the Debtors' argument that section 365(d)(3) renders section 503(b)(1) inapplicable to post-petition obligations under any unexpired lease of nonresidential real property.   The proviso "notwithstanding section 503(b)(1)" at the end of section 365(d)(3) means that the trustee must "timely perform all the obligations of the debtor . . . arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed as rejected," *in spite of the terms of section 503(b)(1).*[18]  Put another way, section 365(d)(3) "effectively reads: *'forget what §503(b) says'* when the issue is pre-rejection period obligations of a nonresidential real estate lease. . ."  and "*aside from administrative expenses provided for in §503(b)(1),* §365(d)(3) creates a new and different obligation – one that does not necessarily rest on the administrative expense concept." [19]   In short, section 365(d)(3) does not limit a landlord's remedies for payment of post-petition rent to that section, rather it expands those rights by providing for the timely payment of rent obligations without the need for a landlord to file an administrative claim and seek immediate payment.[20]

---

[18] II SHORTER OXFORD ENGLISH DICTIONARY, p. 1952 (6th ed. 2007) (notwithstanding means "[i]n spite of, without regard to or prevention by.").

[19] *In re Valley Media, Inc.*, 290 B.R. 73, 77 (Bankr. D. Del. 2003).

[20] *Id.* ("Thus, I do not have to conclude that the obligation [under section 365(d)(3)] is an administrative expense claim. I simply conclude that Congress found it appropriate to require that the lease 'obligations' must be timely paid (i.e., when due in the pre-rejection period), however one may otherwise label those 'obligations.' Additionally, I note that in the second sentence of § 365(d)(3) (relating to the 60 day grace period for cause) the statute speaks in terms of 'performance' of any such obligation, not payment of an administrative expense claim. Absent

Although the majority of the cases cited by the Landlords are either not on point or readily distinguishable, the decision in *In re ZB Co., Inc.* supports the Court's holding that section 365(d)(3) does not render section 503(b)(1) inapplicable to post-petition obligations under any unexpired lease of nonresidential real property.[21]   In that case, the debtors sought the use of cash collateral to collect the stub rent due under the debtors' leases from an agent conducting going out of business sales but not to pay the landlords.   Rather, the debtors sought to use those funds to satisfy other obligations.   The Court found that (i) section 365(d)(3) did not allow for prorating and paying rent on a per diem basis for the stub rent; (ii) "section 503(b)(1)(A) fills the stub period gap created by section 365(d)(3)" and, thus, administrative claims for stub rent are allowed; (iii) absent evidence to the contrary, the amount due under section 503(b)(1)(A) for stub rent is presumed to be the contract rate; and (iv) where the debtors are receiving payment from the liquidator for stub rent there is no justification for the debtors not to pay the stub rent owed to the landlords and, thus, the Court would require immediate payment. [22]

---

the grace period relief, the clear intent of the statute is that lessors get paid when the obligations accrue.   Finally, I note that § 503(a) provides that '[a]n entity may timely file a request for payment of an administrative expense.' There is no suggestion of any such filing requirement in § 365(d)(3). Indeed, just the opposite is suggested. The timely payment of the obligation is dictated by the statute.") (internal footnote omitted).

[21] *In re ZB Co., Inc.*, 302 B.R at 319.

[22] The Court in *In re Chi-Chi's, Inc.* specifically endorses the holding in *In re ZB Co., Inc.* that where the debtors are receiving payment from a liquidator for stub rent there is no justification for the debtors not paying the rent owed to the landlords but only implicitly endorses the holding that "[s]ection 503(b)(1)(A) fills the stub period gap created by section 365(d)(3)." *See In re Chi-Chi's, Inc.*, 305 B.R. at 401.

In addition, Judge Walsh's decision in *In re Valley Media, Inc.* supports the Court's holding.[23]   In that case, the landlord moved for immediate payment of real estate taxes that applied to both a pre-petition and post-petition period but where payment of those taxes was due post-petition under the lease.  The Court held that where the lease obligated the debtor-tenant to pay the tax bill upon receipt, which occurred post-petition, the entirety of the tax payment must be made in a timely manner under section 365(d)(3).  In so holding the Court noted that "§ 365(d)(3) can be read to say that *aside from administrative expenses provided for in §503(b)(1)*, §365(d)(3) creates a new and different kind of 'obligation' - one that does not necessarily rest on the administrative expense concept."[24]   Thus, the Court, at least implicitly, states that section 365(d)(3) and 503(b)(1) are mutually exclusive and neither section trumps or replaces the other.

In sum, by asserting that section 365(d)(3) specifically renders section 503(b)(1) unavailable, the Debtors are effectively arguing that section 365(d)(3) should be read to mean that the trustee must timely perform all the obligations of the debtor arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, *in lieu of or in place of section 503(b)(1)*.  Of course, that is not what the statute says and, not surprisingly, that interpretation is not supported by the case law.  The Court will

---

[23] *In re Valley Media, Inc.*, 290 B.R. at 77.

[24] *Id.* (emphasis added).

not rewrite the statute as requested by the Debtors but, rather, will apply its plain meaning.

### c.    Sections 365(b)(1)(A) and 365(g)(1)

The effect of the Debtors' ultimate assumption or rejection of the Leases on the priority of the Landlords' claims does not alter the Court's determination that it can allow an administrative claim for stub rent under section 503(b)(1). The Debtors argument relies on the supposition that, in the event the Debtors reject one or more of the Leases, under section 365(g)(1), all of the Landlords' claims under the rejected leases will be unsecured, including the claims for unpaid stub rent.   As a result, the Debtors argue that section 503(b)(1)(A) conflicts with section 365(g)(1) and is unavailable to the Landlords.  The Debtors further argue that their interpretation of the statutory scheme is bolstered by the fact that, in the event the Debtors assume one or more of the Leases, the Debtors' default for failure to pay the stub rent stub rent would have to be cured under section 365(b)(1)(A).  Thus, the Debtors argue that section 365(b)(1)(A) makes section 503(b)(1) redundant and unnecessary.

The Court rejects the Debtors' supposition that, in the event of rejection, a landlord's claim for stub rent would necessarily be unsecured.  Rather, Courts routinely allow administrative claims for post-petition occupancy and use of real property by a debtor as an actual, necessary cost of preserving the estate even if the debtor has already rejected the applicable lease or the lease expired pre-

petition.[25]    The fact that, under section 365(g)(1), the rejection of a lease constitutes a breach of the lease immediately before the date of the filing of the petition is of no moment as to whether a debtor may be liable for an administrative claim for post-petition use and occupancy of the premises.

For example, in *In re DVI, Inc.*, the debtors filed bankruptcy in mid-August.    The Court subsequently approved rejection of the applicable lease, effective September 30th.    Although the debtors ceased operations at the premises on that date, they left behind their personal property.    Additionally, for two months the debtors maintained the keys and access to the premises and periodically entered the premises to show prospective purchasers the personal property.    That property was eventually sold to a buyer and all of the debtor's property was removed by November 30th.    The landlord sought allowance of an administrative claim for stub rent and the use and occupancy of the premises for the post-rejection period.    The Court allowed the claim under section 503(b)(1).

In addition, in *Zagata Fabricators, Inc. v. Superior Air Prods.*, the Third Circuit held that a landlord may have an allowed administrative claim under a

---

[25] *Zagata Fabricators, Inc. v. Superior Air Prods.*, 893 F.2d at 627 (allowing administrative claim for post-petition use and occupancy of premises by debtor under expired lease); *In re Garden Ridge Corp.*, 321 B.R. at 676-77 (allowing administrative claim for stub rent and requiring immediate payment prior to debtors' assumption or rejection of lease); *In re DVI, Inc.*, 308 B.R. at 707-08 (allowing administrative claim for stub rent under rejected lease and post-rejection occupancy of premises); and *In re ZB Co., Inc.*, 302 B.R. at 319-320 (allowing administrative claim for stub rent and requiring immediate payment prior to debtors' assumption or rejection of lease). *But see In re Chi-Chi's, Inc.*, 305 B.R. 401-02 (allowing claim for stub rent in rejected lease where debtors had received payment of stub rent from sub-lessees but deferring liquidation and payment of claim until confirmation of plan); and *In re HQ Global Holdings, Inc.*, 282 B.R. at 173-75 (allowing claim for stub rent but deferring liquidation and payment of claim until debtors assume or reject leases);

lease for post-petition use and occupancy of the landlord's premises.  In that case, the Court reversed the denial of allowance of an administrative claim for post-petition use and occupancy of the premises by a debtor *under an expired lease*, noting that there is no authority to support "the extraordinary remedy granted here, namely, possession free of charge."[26]  In this case, the issue is not whether the Landlords will receive a claim for the stub rent but, rather, the nature and priority of that claim, i.e., administrative or unsecured.  The Third Circuit further noted, however, that "[t]here is no question, of course, that the payment of rent for the use and occupancy of real estate ordinarily counts as an 'actual, necessary' cost to which a landlord, as a creditor, is entitled."[27]

The Debtors in this case attempt to distinguish the result in *In re DVI, Inc.* on the basis that, in that case, the allowance of the administrative claim was not at issue, rather the parties disputed the amount of the asserted claim and the timing of payment.  Nonetheless, this Court finds that the Court in *In re DVI, Inc.* reached the correct result under the statute and *Zagata Fabricators, Inc. v. Superior Air Prods.*  Surely, a landlord whose premises are used and occupied by a debtor post-petition under an unexpired lease cannot be in a worse position than a landlord whose lease expired pre-petition merely because the unexpired lease is

---

[26] *Zagata Fabricators, Inc. v. Superior Air Prods.*, 893 F.2d at 628.

[27] *Id*. at 627.

ultimately rejected.[28]   To allow otherwise would grant debtors a windfall neither contemplated nor justified by the Bankruptcy Code.

### d.    Burden of proof under section 503(b)(1)

It is the claimant's burden to establish that its asserted administrative claim is an actual, necessary expense of preserving the debtor's estate.[29] Moreover, the amount of the administrative claim for that use and occupancy is the fair market value, which is presumably the lease rate unless there is evidence to the contrary.[30]

In this case, the Debtors contest whether the Landlords have satisfied their burden of establishing that the stub rent is an actual, necessary expense of preserving the Debtors' estates.[31]    Under *Zagata Fabricators, Inc. v. Superior Air Prods.*, however, the mere fact that the Debtors are occupying the Landlords' premises is sufficient, in and of itself, to establish that payment for that use and occupancy is an actual, necessary expense of preserving the Debtors' estates under section 503(b)(1).[32]    Moreover, the amount of the administrative claim for that use and occupancy is the fair market value, which is presumably the lease

---

[28] An *expired* lease of real property cannot be assumed or rejected. *In re Consol. Med. Transp., Inc.*, 300 B.R. 435, 450 (Bankr. N.D. Ill. 2003) ("Section § 365 excludes expired leases from the assumption powers.").

[29] *In re DVI, Inc.*, 308 B.R. at 708.

[30] *Id.*

[31] The Debtors do not dispute the amount of stub rent due under the Leases.

[32] *Zagata Fabricators, Inc. v. Superior Air Prods.*, 893 F.2d at 627.  *See also In re Garden Ridge Corp.*, 321 B.R. at 676; *In re DVI, Inc.*, 308 B.R. at 708; *In re ZB Co., Inc.*, 302 B.R. at 319; and *In re HQ Global Holdings, Inc.*, 282 B.R. at 173.

rate unless there is evidence to the contrary.[33]  The Debtors submitted no such evidence in this case.  Thus, under section 503(b)(1), the Court will allow the Landlords' administrative claims in the agreed amount.[34]

## IV. The Court Will Not Require Immediate Payment Of The Landlords' Allowed Administrative Claims

In addition to seeking allowance of administrative claims for stub rent, the Landlords request that the Court require the Debtors to pay the claims within 20 days of allowance.  The timing of payment of an administrative claim for stub rent was addressed by Judge Walrath in *In re HQ Global Holdings, Inc.*

> Section 503 provides that an entity can request payment of an administrative expense which may be allowed after notice and a hearing.  Section 503, however, does not address the question of when a claim for administrative expense is to be paid.
>
> The determination of the timing of payment of administrative expenses is a matter within the discretion of the bankruptcy court.  In making this determination, one of the chief factors courts consider is bankruptcy's goal of an orderly and equal distribution among creditors and the need to prevent a race to the debtor's assets.  Thus, distributions prior to confirmation of a plan are usually disallowed when the estate may not be able to pay all administrative expenses in full.  Other factors include the particular needs of each administrative claimant and the length and expense of the case's administration.[35]

In support of their request, the Landlords argue that the Debtors should not be permitted to pick and choose when certain administrative claims are paid.  For instance, the Debtors should not be allowed to pay its vendors for post-

---

[33] *In re Garden Ridge Corp.*, 321 B.R. at 676-77; *In re DVI, Inc.*, 308 B.R. at 708; and *In re ZB Co., Inc.*, 302 B.R. at 319.

[34] As noted earlier, the Debtors do not dispute the amount of stub rent due under the Leases.

[35] *In re HQ Global Holdings, Inc.*, 282 B.R. at 173 (internal citations omitted).

petition receipt of goods or its professionals for their allowed fees and expenses while not paying the Landlords for stub rent.  To let the Debtors do so would treat claims of the same priority differently in derogation of a key principle of the Bankruptcy Code and unfairly place the risk of administrative insolvency solely on unpaid administrative claimants.

The Debtors oppose the Landlords' request for immediate payment.  They argue that payment should await confirmation of the Debtors' plan of reorganization at which time payment of allowed administrative claims will be required by sections 507(a)(2), 1123(a)(1), 1129(a)(1) and 1129(a)(9) of the Bankruptcy Code.  Ironically, the Debtors also argue, as did the Landlords, that requiring payment would be inequitable to other administrative claimants.  Although in the Debtors' case, they seek to treat the Landlords equally with other unpaid holders of administrative claims.  Finally, the Debtors argue that requiring the Debtors to pay administrative claims for stub rent would open the floodgates of litigation by encouraging other landlords to request immediate payment of stub rent.

The Landlords' argument that delaying the payment for stub rent while immediately paying other administrative claims inequitably treats their unpaid claims from the paid claims is fundamentally flawed.  An equal distribution among creditors does not require a simultaneous distribution.  While the Landlords are losing the time value of their unpaid stub rent as it sits in the hands of the Debtors not accruing interest – that is simply a normal and

unremarkable result of the fact that bankruptcy proceedings take time.[36]  Indeed,

the payment of interest on claims in bankruptcy is generally not available other

than, for example, the payment of post-petition interest to over secured

creditors.[37]  The cases cited by the Landlords in support of their argument are

readily distinguishable as they address a very different scenario in which

administrative creditors are receiving different distributions on the principal

amount of their claims, e.g., one creditor is receiving 100% payment on its claim

while another is receiving 75%.[38]  This usually occurs in cases that become

---

[36] THOMAS H. JACKSON, THE LOGIC AND LIMITS OF BANKRUPTCY LAW, pp. 151-92 (Harvard Univ. Press 1986).

[37] *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 370 (1988) ("Even more important for our purposes than § 506's use of terminology is its substantive effect of denying undersecured creditors postpetition interest on their claims-just as it denies over secured creditors postpetition interest to the extent that such interest, when added to the principal amount of the claim, will exceed the value of the collateral. Section 506(b) provides that ' [t]o the extent that an allowed secured claim is secured by property the value of which ... is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim.' (Emphasis added.) Since this provision permits postpetition interest to be paid only out of the 'security cushion,' the undersecured creditor, who has no such cushion, falls within the general rule disallowing postpetition interest. See 11 U.S.C. § 502(b)(2). If the Code had meant to give the undersecured creditor, who is thus denied interest on his claim, interest on the value of his collateral, surely this is where that disposition would have been set forth, and not obscured within the 'adequate protection' provision of § 362(d)(1). Instead of the intricate phraseology set forth above, § 506(b) would simply have said that the secured creditor is entitled to interest 'on his allowed claim, or on the value of the property securing his allowed claim, whichever is lesser.' Petitioner's interpretation of § 362(d)(1) must be regarded as contradicting the carefully drawn disposition of § 506(b).").

[38] *In re Specker Motor Sales Co. v. Eisen*, 393 F.3d 659, 664 (6th Cir. 2004) (In administratively insolvent estate, counsel that received interim compensation for 100% of allowed claim required to disgorge that amount of claim necessary to ensure equal pro rata distribution among all allowed administrative claims.); *Delgado Oil Co. v. Torres*, 785 F.2d 857, 860 (10th Cir. 1986) (Statute appointing debtor in possession as trust enables *(but does not require)* the trustee to achieve an equality of distribution among the corporation's *unsecured* creditors); *In re Holley Garden Apts., Ltd.*, 238 B.R. 488, 495 (Bankr. M.D. Fla. 1999) (Chapter 11 plan is confirmable when it meets the criteria of section 1129, which includes equal distribution among similarly situated creditors.); *In re Telesphere Commc'ns. Inc.*, 148 B.R. 525, 529 (Bankr. N.D. Ill. 1992) (Requiring payment of post-petition obligations and, thus inequality of distribution, under section 365(d)(3) – *not 503(b)(1)* – despite administratively insolvency); *In the Matter of Holly's, Inc.*, 140 B.R. 643

administratively insolvent post-petition but not all administrative claims are paid.  Thus, courts will not compel payment of administrative claims where there is a substantial risk of insolvency.[39]

The Landlords have failed to meet the generally accepted standard articulated in *In re HQ Global Holdings, Inc.*  As discussed above, the delay in payment is not in and of itself inequitable.  The Landlords further argue that they are being required to bear the risk of administrative insolvency -- but there is virtually no such risk in this case.  In addition, the Debtors have already filed a plan of reorganization and confirmation is scheduled for October 6, 2008.  Under the proposed plan, allowed administrative claims will be paid in full "as soon as reasonably practicable" after the initial distribution made under the plan.[40]  Thus, any delay in payment will be minimal and any risk of administrative insolvency is further reduced by the likely short administration of the Debtors' cases.  Finally, the Landlords did not provide any evidence that the delay in payment would prejudice or harm the Landlords.

---

(Bankr. W.D. Mich. 1992) (Pre-petition subordination agreement in dual bankruptcy case unenforceable where both parties in bankruptcy.); *In re Vernon Sand & Gravel, Inc.*, 109 B.R. 255, 257 (Bankr. N.D. Ohio 1989) (If administrative claims are paid on an interim basis and the estate is thereafter found to be administratively insolvent, disgorgement of the interim payments is appropriate to ensure a pro rata distribution to administrative claimants); and *In re Western Farmers Ass'n*, 13 B.R. 132, 134 (Bankr. W.D. Wash. 1981) (To ensure equality of treatment to all allowed administrative claims, interim payments of compensation to debtor's professionals not to be made because there is a significant possibility of administrative insolvency).

[39] *In re HQ Global Holdings, Inc.*, 282 B.R. at 173.

[40] First Amended Joint Plan Of Reorganization Proposed By Goody's Family Clothing, Inc. And Its Subsidiary Debtors And The Official Committee Of Unsecured Creditors, §3.1 [Docket No. 568].

In addition, a debtor's decision as to the timing of the payment of claims is generally inside the ordinary course of the debtor's business.[41]    Certainly a decision relating to the payment of rent by these Debtors, which lease and operate approximately 300 stores, is inside the Debtors' ordinary course of business.  As such, the Debtors' decision is entitled to deference, i.e., "the Court will not entertain an objection to [a transaction made in the ordinary course of business], provided that the conduct involves a business judgment made in good faith upon a reasonable basis and within the scope of authority under the Bankruptcy Code."[42]    Although courts generally do not apply the business judgment standard under 363(b) to the payment (or non-payment) of post-petition rent, it seems the more logical and appropriate standard.  As the Court has determined in this case that a delay in payment is not in and of itself inequitable, the Debtors' decision not to pay the stub rent is "within the scope of authority under the Bankruptcy Code."[43]  Moreover, there is no evidence that the Debtors' decision is anything other than "a business judgment made in good faith upon a reasonable basis."[44]

Finally, courts have consistently declined to require immediate payment of stub rent in similar circumstances.  For example, in *In re HQ Global Holdings,*

---

[41] *In re Nellson Nutraceutical, Inc.*, 369 B.R. 787, 797 (Bankr. D. Del. 2007) (Setting forth the horizontal and vertical dimension test for determining whether a transaction is in the ordinary course of business).

[42] *Id.* at  799 (citation omitted).

[43] *Id.*

[44] *Id.*

*Inc.* the Court deferred its decision on the amount and payment of stub rent pending the debtors' decision regarding assumption or rejection of the leases.[45] The Court based its decision on the fact that assumption would moot the issue, the debtors' stated intention to reorganize under its current business model, which would require the assumption of all or most of the leases, and the cost savings associated with deferring the decision. The facts in this case are even more compelling as the Debtors have actually filed a plan of reorganization under which they seek to reorganize under their current business model.

The Court in *In re Chi's-Chi's, Inc.* also declined to require immediate payment.[46] In so doing the Court relied on the fact that the debtors would soon "monetize its assets and proceed to claim resolution and eventual payment under a plan."[47] The Court also noted that there was no risk of administrative insolvency. These are the very facts before the Court in this case.

The Court in *In re ZB Co., Inc.* did require immediate payment of stub rent.[48] That case, however, is readily distinguishable on this point. As discussed earlier, in that case, the debtors sought the use of cash collateral to collect the stub rent due under the debtors' leases from the agent conducting going out of business sales. The Debtors did not seek to use those funds to pay the landlords the stub rent, but, rather, sought to use the money to satisfy other obligations. As

---

[45] *In re HQ Global Holdings, Inc.,* 282 B.R. at 175.

[46] *In re Chi's-Chi's, Inc.,* 305 B.R. at 401-02.

[47] *Id.* at 401.

[48] *In re ZB Co., Inc.,* 302 B.R. at 320.

a result, the Court found that since the debtors were receiving payment from the liquidator for stub rent there was no justification for the debtors not to pay the stub rent owed to the landlords and the Court required immediate payment of the stub rent. There is no such arrangement in this case. The Debtors continue to occupy the Landlords' premises and conduct business at the locations. The Debtors are not withholding payment of stub rent that they have already received from a liquidator or subtenant.

Based on minimal risk of administrative insolvency in this case, the terms of the pending plan of reorganization that is scheduled for confirmation in approximately one month and the lack of any evidence of potential harm to the Landlords arising from the ongoing delay in payment of the stub rent, the Court will not require the Debtors to pay the allowed administrative claims of the Landlords at this time. Alternatively, as the delay in payment is within the scope of authority under the Bankruptcy Code and there is no evidence that the Debtors' decision is anything other than a business judgment made in good faith upon a reasonable basis, the Court will not entertain the Debtors' objection to the timing of the payment of stub rent. Thus, regardless of whether the standard articulated in *In re HQ Global Holdings, Inc.* or the business judgment standard under section 363(b) is applicable, the Court will deny the Landlords' request for immediate payment of stub rent.

## <u>CONCLUSION</u>

For the reasons set forth above, the Court will allow the Landlords' administrative expense claims in the agreed amount under section 503(b)(1) of the Bankruptcy Code. The Court will deny, however, the Landlords' request for immediate payment of the allowed administrative claims. An order will be issued.