FOR PUBLICATION                                    [Docket No. 1]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

```
———————————————————————————
                                  :
IN RE: GOODY'S FAMILY             :
CLOTHING, INC., et al.            :
———————————————————————————       :    Civil Action No.
                                  :    08-0585(RMB)
GOODY'S FAMILY CLOTHING, INC.,    :
et al.,                           :    On Appeal from
                                  :    Bankruptcy Case No.
               Appellants,        :    08-11133 (CSS)
                                  :
      v.                          :
                                  :    **OPINION**
MOUNTAINEER PROPERTY CO. II,      :
LLC, et al.,                      :
                                  :
               Appellees.         :
                                  :
———————————————————————————
```

Marion Maxwell Quirk
Skadden, Arps, Slate, Meagher & Flom
One Rodney Square
P.O. Box 636
Wilmington, DE 19899
      Attorney for Appellants

Duane D. Werb
Regina A. Iorii
Werb & Sullivan
300 Delaware Avenue, 10th Floor
P.O. Box 25046
Wilmington, DE 19899
      Attorneys for Appellee Mountaineer Property Co. II, LLC

Sherry Ruggerio Fallon
Tybout, Redfearn & Pell
750 Shipyard Drive, Suite 400
P.O. Box 2092
Wilmington, DE 19899-2092
      Attorney for Appellee Stafford Bluffton, LLC

John D. Demmy
Stevens & Lee

1

1105 North Market Street, 7th Floor
Wilmington, DE 19801

Nicholas W. Whittenburg
Miller & Martin PLLC
832 Georgia Avenue, Suite 1000
Chattanooga, TN 37402
    Attorneys for Appellee Eastgate Mall, LLC


**BUMB**, UNITED STATES DISTRICT JUDGE:[1]

    The appellants, Goody's Family Clothing, Inc. and certain of
its subsidiaries (the "Debtors" or "Debtor-Appellants"), seek
reversal of the Bankruptcy Court's decisions granting
administrative expense priority for unpaid stub rent to three of
their landlords (collectively, the "Landlords" or "Landlord-
Appellees") whose leases Debtor-Appellants rejected: Mountaineer
Property Co. ("Mountaineer"), Eastgate Mall, LLC ("Eastgate"),
and Stafford Bluffton, LLC ("Stafford").

    This appeal calls upon the COURT to resolve the interplay of
two sections of the Bankruptcy Code (Title 11 of the United
States Code).  Specifically, the COURT must decide whether "stub
rent" -- that is, rent covering a period of a debtor's post-
petition tenancy for which payment became due pre-petition -- may
be entitled to administrative expense priority under 11 U.S.C. §
503(b)(1), as the Bankruptcy Court decided, or whether the
statutory scheme set out in 11 U.S.C. § 365 exclusively governs

---

[1] The Honorable Renée Marie Bumb, United States District
Judge for the District of New Jersey, sitting in the District of
Delaware by designation.

rent payment obligations, thereby precluding § 503(b)(1) priority, as the Debtor argues.

For the reasons set forth below, the COURT holds that Landlord-Appellees are entitled to § 503(b)(1) administrative expense priority for Debtor-Appellants' post-petition occupancy and use of their leased property.  The Debtors' genuine occupancy and use of the Landlords' premises, unlike premises vacated by a debtor pre-petition, constituted an actual expense necessary to the preservation of the Debtors' estate.  The decision of the Bankruptcy Court is therefore affirmed.

## I. Statement of Facts

The relevant facts are undisputed.  The Debtors, apparel retailers that operated 350 stores[2] nationwide, filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code on June 9, 2008 (the "Petition Date").  Eight days earlier, on June 1, the Debtors had failed to pay rent for the month of June to the three Landlord-Appellees.[3]  (Importantly, it is not disputed that the rent was due on June 1.)  Debtor-Appellants resumed rent payments on July 1, 2008, but the June rent remains unpaid.  The

---

[2] Debtor-Appellants have closed a number of these stores since the Petition Date.

[3] Debtor-Appellants also failed to pay rent to other landlords who are not parties to this appeal.  The Bankruptcy Court has granted administrative expense priority for a number of these other landlords, and Debtor-Appellants' appeals have been stayed pending this decision.

unpaid stub rent, that is, the rent for the 21-day period from the Petition Date through June 30, is: $22,305.56 for Appellee Eastgate; $19,855 for Appellee Stafford; and $18,700 for Appellee Mountaineer.  Debtor-Appellants occupied and continued to conduct retail business in Landlord-Appellees' three properties during the stub rent period.  In fact, during the stub rent period, Debtor-Appellants contracted with and collected rent from a liquidator, which conducted store-closing sales at the three properties.

Landlord-Appellees each moved before the Bankruptcy Court[4] for allowance and immediate payment of the June stub rent.  On August 28, 2008, the Bankruptcy Court granted the motion of Appellee Mountaineer, holding that although § 365(d)(3) did not compel payment by the Debtor, Mountaineer could nonetheless pursue its stub rent claim as an administrative expense under § 503(b)(1).  In re Goody's Family Clothing, Inc., 392 B.R. 604, 618 (Bankr. D. Del. 2008).  Subsequently, on October 3, 2008, for the same reasons explained in its August 28 OPINION, the Bankruptcy Court granted the motions of Appellees Eastgate and Stafford.[5]

---

[4] The Honorable Christopher S. Sontchi, United States Bankruptcy Judge for the District of Delaware.

[5] The Bankruptcy Court denied requests by all three Landlord-Appellees to compel Debtor-Appellants to pay its stub rent obligation immediately.

4

Debtor-Appellants timely appealed the Bankruptcy Court's August 28 and October 3 ORDERS, and this COURT consolidated the appeals, as they presented the same issues of law. The COURT heard oral argument on this matter on March 19, 2009.

## II. Legal Standards

A United States District Court has jurisdiction to hear appeals of orders of the Bankruptcy Court pursuant to 28 U.S.C. § 158(a)(1). This COURT reviews the Bankruptcy Court's "legal determinations de novo, its factual findings for clear error, and its exercise of discretion for abuse thereof." In re American Pad & Paper Co., 478 F.3d 546, 551 (3d Cir.2007); see also Fed. R. Bankr. P. 8013. As this appeal presents only pure questions of law, the COURT will exercise plenary review. In re Montgomery Ward Holding Corp., 268 F.3d 205, 208 (3d Cir. 2001).

## III. Discussion

At issue in this case is whether a mechanism exists within the Bankruptcy Code to allow Landlord-Appellees to recover, on a priority basis, 21 days of rent owed by the Debtor-Appellants. Debtor-Appellants argue that the terms and structure of § 365 leave Landlord-Appellees with no recourse other than to wait in line with all other unsecured creditors. Specifically, Debtor-Appellants argue that § 365(d)(3) requires payment only of rent due between the Petition Date and the debtor's assumption or rejection the lease. Section 365(g), they argue, relegates all

5

other unpaid rent owed under a rejected lease to unsecured

status.  In relevant part, these provisions state:

> The trustee shall timely perform all the obligations of
> the debtor . . . arising from and after the order for
> relief under any unexpired lease of nonresidential real
> property, until such lease is assumed or rejected,
> notwithstanding section 503(b)(1) of this title.

11 U.S.C. § 365(d)(3).

> [T]he rejection of an . . . unexpired lease of the debtor
> constitutes a breach of such contract or lease . . . if
> such contract or lease has not been assumed under this
> section or under a plan confirmed under chapter 9, 11,
> 12, or 13 of this title . . . .

11 U.S.C. § 365(g).

Landlord-Appellees counter that the § 503(b)(1)

administrative expense procedure provides an alternative

mechanism for the priority recovery of stub rent.  Importantly,

Landlord-Appellees maintain that an administrative expense claim

for unpaid rent does not seek enforcement of the lease as a

breached contract; rather, such a claim seeks recovery for actual

occupancy and use, which, Landlord-Appellees aver, is an actual

expense necessary to the preservation of the estate.  (Oral Arg.

Tr. at 46-48.)  Section 503(b)(1) states:

> After notice and a hearing, there shall be allowed
> administrative expenses, . . . including . . . the
> actual, necessary costs and expenses of preserving the
> estate . . . .

11 U.S.C. § 503(b)(1)(A).

The COURT will address, in turn, the two issues involved in

this dispute: whether § 365 exclusively sets the parameters for a

non-residential landlord's recovery of rent, and, if not, whether
the 21 days of rent at issue here is an allowable administrative
expense under § 503(b)(1).  By way of background, however, the
COURT will first explain the statutory scheme that is the subject
of this appeal.

**A. The Statutory Scheme**

**1. Sections 365 and 503(b)(1)**

It is often said that the Bankruptcy Code has "two
overarching purposes, one equitable and the other
rehabilitative."  Westmoreland Human Opportunities, Inc. v.
Walsh, 246 F.3d 233, 250 (3d Cir. 2001).  Sections 503(b) and 365
aim to balance those policies.

Section 503(b) preserves the debtor's estate during the
pendency of bankruptcy proceedings by establishing a category of
"allowed administrative expenses," which includes "the actual,
necessary costs and expenses of preserving the estate" while in
bankruptcy.  11 U.S.C. § 503(b).  These expenses "receive first
priority in the distribution of the assets of the debtor's
estate."  In re Hechinger Inv. Co. of Delaware, 298 F.3d 219, 224
(3d Cir. 2002) (citing 11 U.S.C. § 507(a)(1)).[6]  "By placing
creditors who are entitled to payment of these administrative

---

[6] Indeed, in a Chapter 11 case, "a court cannot confirm a
distribution plan unless the plan provides full cash payment of
all § 503(b) administrative expense claims or the claim holder
agrees to different treatment."  Id. (citing 11 U.S.C. §§
943(b)(5), 1129(a)(9)(A)).

7

expenses first in line, section[] 503 . . . advance[s] the estate's interest in survival above all other financial goals." Zaqata Fabricators, Inc. v. Superior Air Products, 893 F.2d 624, 627 (3d Cir. 1990).  For a creditor to bring an administrative expense claim under § 503(b)(1), however, it must, through a process of notice and hearing before the Bankruptcy Court, satisfy "the heavy burden of demonstrating that the costs and fees for which it seeks payment provided an actual benefit to the estate and that such costs and expenses were necessary to preserve the value of the estate assets."  In re O'Brien Environmental Energy, Inc., 181 F.3d 527, 533 (3d Cir. 1999) (internal citation omitted).

Prior to the 1984 Amendments to the Bankruptcy Code, a commercial debtor "was not required to pay rent, but the estate was liable for the reasonable value of the use and occupancy of the premises."  In re Dieckhaus Stationers of King of Prussia, Inc., 73 B.R. 969, 971 (Bankr. E.D. Pa. 1987) (citing In re Bye-Rite Distributing Inc., 47 B.R. 660, 663-64 (Bankr. D. Utah 1985)).  Under this "reasonable value" standard, a landlord could recover some or all of the rent owed for the period prior to assumption or rejection of the lease by bringing an administrative expense claim pursuant to § 503(b)(1)(A).  Id.

With the 1984 Amendments, however, Congress altered the procedure by allowing commercial landlords to bypass § 503(b), in

what is now codified as § 365(d)(3).  "[N]otwithstanding" the
administrative expense procedure of § 503(b)(1), § 365(d)(3)
states, debtors "shall timely perform all the obligations . . .
under any unexpired lease of nonresidential real property" that
arise between the petition-date[7] and the time the lease is
assumed or rejected.  11 U.S.C. § 365(d)(3).  In other words, §
365(d)(3) makes recovery of post-petition rent automatic, rather
than requiring landlords to bring, and prove, a § 503(b)(1)
administrative expense claim.  The 1984 Amendments also required
the debtor to assume or reject the lease within a fixed period,
which has since been extended to 120 days.  11 U.S.C. §
365(d)(4); see also Bankruptcy Abuse Prevention and Consumer
Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23 (2005)
(extending the deadline for assumption or rejection from 60 to
120 days).  For cause shown, the Bankruptcy Court may extend that
limit 90 additional days.  11 U.S.C. § 365(d)(4)(B)(I).

     The passage of § 365(d)(3) struck a balance of equities.  On
the one hand, a commercial landlord may not evict his bankrupt
tenant, even if that means a shopping mall must endure the losses

_____

     [7] Technically, the lease obligations set out in § 365(d)(3)
arise "not [on] the date on which the petition is filed but [on]
the date on which the order for relief is entered.  Often these
are the same date, but not always . . . ."  In re Handy Andy Home
Improvement Centers, Inc., 144 F.3d 1125, 1126 (7th Cir. 1998).
When a petition is filed voluntarily, as it was here, the order
for relief is deemed to enter upon commencement of the case.  11
U.S.C. § 301.

flowing from a vacant anchor-tenant (e.g., department store) for as long as seven months.  On the other hand, a debtor-tenant must pay rent during this interim period; the landlord need not pursue a burdensome administrative expense claim to recover what he is owed under the lease.  Additionally, the landlord's period of uncertainty, even if burdensome, is capped at seven months (unless the landlord consents to a further extension).

### 2.  Applicability of § 365(d)(3) to Stub Rent?  The Montgomery Ward Case

Stub rent presents a peculiar dilemma under § 365(d)(3). The statute requires only that the debtor must perform the lease obligations "arising . . . after the order for relief . . . ." 11 U.S.C. § 365(d)(3).  Courts have differed on whether an obligation to pay rent "arises" on the day that rent is due (the "billing-date approach"), or on each day the tenant occupies the leased premises (the "proration approach").  Compare In re Koenig Sporting Goods, Inc., 203 F.3d 986, 989 (6th Cir. 2000), with In re Duckwall-ALCO Stores, Inc., 150 B.R. 965, 973-74 (D. Kan. 1993).

In a factually different context, the Third Circuit adopted the billing-date approach.  In re Montgomery Ward Holding Corp., 268 F.3d 205, 209 (3d Cir. 2001).  In that case, during the post-petition/pre-rejection window, a landlord billed his debtor-tenant for reimbursement of taxes owed under the lease. Believing it had an obligation under § 365(d)(3) to pay only the

portion of the taxes that had accrued post-petition, the debtor-tenant payed a prorated portion of the bill. The Third Circuit rejected this approach, however, holding that the debtor-tenant had to pay the whole tax bill because, under the lease, the bill had become due, and therefore arose, post-petition.

Tracking the logic of <u>Montgomery Ward</u>, the Bankruptcy Court below held that the rent obligation here arose pre-petition, as it was due eight days before the Petition Date. <u>Goody's</u>, 392 B.R. 608-09. Thus, the Bankruptcy Court held that the rent-payment obligation established by § 365(d)(3) does <u>not</u> apply to stub rent. <u>Id.</u> It stated, "Under the plain meaning of section 365(d)(3), the June rent obligations arose pre-petition and are not administrative expenses under section 365(d)(3)." <u>Id.</u> at 609 (citations omitted).

The parties do not dispute the Bankruptcy Court's conclusion. (App't Br. 11; App'e Br. 18.) Although Landlord-Appellees have suggested that this COURT could revisit the issue, Debtor-Appellants disagree. (Oral Arg. Tr. at 72-73, 75.) Because the COURT affirms on the § 503(b)(1) grounds, it will not disturb the Bankruptcy Court's application of <u>Montgomery Ward</u> to stub rent. The COURT notes, however, that if it had reached this issue, which it need not do, it might have read <u>Montgomery Ward</u>

11

more narrowly than did the Bankruptcy Court.[8]

---

[8] The purpose of § 365(d)(3) was to relieve landlords of the burdens imposed by the administrative expense procedure. Montgomery Ward, 268 F.3d at 210-11. "Congress intended that the debtor in possession perform all the obligations at the time required in the lease." Id. at 211 (internal citation omitted). It is therefore a perverse result that debtor-tenants could use § 365(d)(3) offensively to avoid timely rent payments. Indeed, the 1984 Amendments contemplated the applicability of § 365(d)(3) for only 60 days (subject to extension). It is inconceivable that a debtor-tenant could have avoided half of its rent obligation during this 60-day period by strategically filing a bankruptcy petition on the second day of the month and then rejecting the lease 60 days later, on the 31st day of the subsequent month.

The application of Montgomery Ward to monthly rent payments is problematic, not just because the result runs counter to the purpose of § 365(d)(3), but also because it produces confounding consequences. For example, most commercial leases require full payment of the total rent obligation, with amortization in monthly installments. Applying Montgomery Ward to this payment structure, the entire rent obligation "arises" pre-petition, thus depriving § 365(d)(3) of any practical effect. Conversely, if a lease required that rent be due each day (say, allowing monthly payments for convenience), then § 365(d)(3) would presumably require payment for the complete post-petition/pre-rejection period. Indeed, Montgomery Ward appears to have contemplated this sort of consequence. 268 F.3d at 212 ("[S]trategic behavior . . . can be constrained by forethought and careful drafting."). It is nonetheless perplexing that the statute's impact would turn upon such insignificant lease-drafting choices.

The COURT sees three ways of reconciling Montgomery Ward's apparent rejection of the proration approach with the legislative intent, each of which avoids the above-mentioned inconsistencies. First, rent might be viewed generally as a unique sort of obligation that "arises" each day of a tenant's occupancy. In other words, if one month's rent is not paid on June 1 (the due date), then that month's rent obligation arises again, in full, on June 2, 3, and every subsequent day of that month. The result would be that a tenant like Debtor-Appellants who files for bankruptcy on June 9, still owes rent for the full month (not a prorated portion) under § 365(d)(3).

Grace periods provide a second option. Many leases purport to require payment of rent on a particular date, but allow a "grace period" for payment before the tenant is in default. It might be said that the rent is actually due on the last day of the grace period (and that the "due date" defined by the lease is

**B. Exclusivity of § 365**

At the heart of this appeal lies the question of whether §
365 provides the exclusive mechanism for the recovery of rent, as
Debtor-Appellants contend.  If so, then § 365(g) relegates
Landlord-Appellees' claims to unsecured status.  If not, may
Landlord-Appellees seek recovery of rent by means of § 503(b)(1)
administrative expense claims, as Landlord-Appellees contend.

"The starting point in interpreting a statute is its
language . . . ." Good Samaritan Hosp. v. Shalala, 508 U.S. 402,
409 (1993).  "If the statutory language is unambiguous, in the
absence of a clearly expressed legislative intent to the
contrary, that language must ordinarily be regarded as
conclusive." Reves v. Ernst & Young, 507 U.S. 170, 177 (1993).
"[T]he plain meaning of statutory language is often illuminated
by considering not only the particular statutory language at
issue, but also the structure of the section in which the key

---

merely a mechanism to induce early payment), or, alternatively,
that the rent-payment obligation arises every day of the grace
period.  If the grace period expires post-petition, it might be
said that the payment obligation has arisen post-petition under §
365(d)(3).

Default penalties provide yet a third option.  Many leases
establish a financial penalty for delinquent rent payments.  (The
Eastgate lease, for example, establishes a three-percent penalty,
which may be imposed after the applicable period for curing the
default.  (Eastgate Lease, 6 (GFC112) [Docket No. 15, App'x Pt.
3].))  If the penalty accrues during the post-petition/pre-
rejection period (as it would have for the Eastgate lease), one
might interpret the lease as creating a new obligation to which §
365(d)(3) would apply, namely, payment of the complete delinquent
rent plus the penalty.

language is found, the design of the statute as a whole and its object . . . . " <u>Alaka v. Attorney General</u>, 456 F.3d 88, 104 (3d Cir. 2006) (internal citation omitted).  If the statute is ambiguous, however, courts must rely upon the legislative intent and supplementary canons of interpretation.  <u>United States v. Gilchrist</u>, 215 F.3d 333, 336 (3d Cir. 2000).

### 1. Statutory Language and Structure

The Court turns first to the language and structure of §§ 365 and 503(b)(1).  On their face, nothing within these provisions suggests that only § 365, at the exclusion of § 503(b)(1), applies to rent payment obligations.  Debtor-Appellants contend, however, that the preemptive force of § 365 is conveyed by the statute's overall structure.  They argue that, taken together, subsections (a), (b), (d), and (g) of § 365 "fully address" a debtor-tenant's rent obligation, and this completeness implies § 365's preclusive effect.  (App't Br. 13.)

### a. Statutory Structure

As Debtor-Appellants correctly point out, § 365 provides a roadmap to parties and courts as follows:

First,      A debtor must assume or reject an unexpired lease.  11 U.S.C. § 365(a).

Second,     Lease obligations arising after filing the petition, but before assumption or rejection of the lease, are payable automatically.  11 U.S.C. § 365(d)(3).

Third,      Lease obligations arising before filing the petition are payable according to the following terms:

    a.    If a debtor assumes the lease, unpaid rent is due promptly.  11 U.S.C. § 365(b)(1)(A).

    b.    If a debtor rejects the lease, the lease is deemed to be breached.  11 U.S.C. § 365(g)(1).

        i.    The payment obligation for a breached lease under § 365(g) is deemed an unsecured debt.  <u>Bildisco</u>, 465 U.S. at 530.

Debtor-Appellants insist that the statutory trail comes to a dead-end here, at § 365(g).  Stub rent, they contend, is nothing more than the sort of unsecured debt encompassed by § 365(g).

The Debtors' argument may be more persuasive in cases where the leased premises go unused -- "lights-out leases".[9]  But in cases where the premises are used -- "lights-on leases" -- and the debtor's use constitutes an actual expense necessary to the preservation of the estate, then § 503(b)(1) creates a statutory mechanism for recovery of rent.  Thus, contrary to Debtor-Appellants' argument, the statutory trail must include an additional turn under the third step, in certain circumstances giving the unsecured claim administrative expense priority:

        **ii.    If the leased premises are used post-petition, and the use is necessary to preserve the estate, the landlord may recover rent, on a priority basis, for the reasonable value of the used premises.  11 U.S.C. § 503(b)(1).**

<u>Bildisco</u>, 465 U.S. at 530 ("If the debtor-in-possession elects to continue to receive benefits . . . pending a decision to reject

---

[9] As this is not such a case, the COURT need not address the relevance of § 503(b)(1) to leased premises that have been vacated or are unused by the debtor-tenant.

or assume the contract, the debtor-in-possession is obligated to pay for the reasonable value of those services . . . ."). <u>In other words, recovery of the rent as an administrative expense is not an enforcement of the breached lease; it is an equitable remedy to compensate the landlord for providing a service that was necessary to preserve the estate.</u>[10]

This understanding of the statutory scheme is consistent with the longstanding and widespread application of § 503(b)(1) to payment of rent.  Before § 365(d)(3) was added to the Bankruptcy Code, commercial debtors were "not required to pay rent, but the estate was liable for the reasonable value of the use and occupancy of the premises" as an administrative expense. <u>Dieckhaus Stationers</u>, 73 B.R. at 971 (internal citation omitted). Just because § 365(d)(3) now makes post-petition rent automatically payable, does not mean that, when a debtor-tenant's post-petition occupancy and use of property is outside the ambit of § 365(d)(3), landlords may not recover under the traditional administrative expense procedure.  <u>See In re Dant & Russell, Inc.</u>, 853 F.2d 700, 707 (9th Cir. 1988) ("Ordinarily, any claim arising during this interim period would be treated as

---

[10] By this, the COURT does not suggest that landlords should recover twice, once for use of the property and once for breach of the lease.  If a landlord is ultimately able to recover as an unsecured creditor for breach of the lease, any prior priority recovery for occupancy and use should, of course, be subtracted from the amount owed for the breach.

prepetition, however, where the 'trustee actually uses the leased property, the law is clear that the rent incurred is an allowable administrative expense.'" (quoting 2 Collier on Bankruptcy ¶ 365.08 (15th ed. 1986))).  Nothing in the language or structure of the statute weighs against this approach.

Furthermore, Debtor-Appellants' underlying premise, that § 365 "fully address[es]" enforcement of lease obligations, is faulty.  Despite the 1984 insertion of § 365(d)(3), § 503(b) has not been rendered irrelevant or void as to post-petition rent in general.  For example, if a debtor-tenant decides to assume a lease but later reverses that decision (for example, because it cannot profitably operate at that location), the landlord's rent-recovery remedy is the administrative expense procedure, enabling the recovery of up to two years of lost rent.  11 U.S.C. § 503(b)(7).  Furthermore, although the Bankruptcy Code is silent on a landlord's remedy if a debtor-tenant fails to pay post-petition rent as required by § 365(d)(3), a majority of courts have held that his remedy lies with an "automatic" § 503(b) administrative expense claim.  Laurence P. King, 3 Collier on Bankruptcy § 365.04[3][g][ii] (5th ed. 2008); see also In re Midway Airlines Corp., 406 F.3d 229, 235-37 (4th Cir. 2005).  Courts have also used the § 503(b)(1) administrative expense procedure in other rent-recovery cases, as when a debtor-tenant continues to occupy and use leased property post-petition, even

17

though the lease is expired or was previously rejected.  These examples illustrate the complementarity of §§ 365 and 503(b) as mechanisms by which landlords may recover rent.

### b. "Notwithstanding"

Debtor-Appellants further press their argument by contending that the preemptive force of § 365 is conveyed, if not by the statutory structure, then by the word "notwithstanding" in subsection (d)(3).  The Bankruptcy Court below engaged in a thoughtful discussion of this point, and the COURT adopts that discussion in full.  Citing the dictionary definition of "notwithstanding" as "[i]n spite of, without regard to or prevention by," the Bankruptcy Court explained,

> The proviso "notwithstanding section 503(b)(1)" at the end of section 365(d)(3) means that . . . "aside from administrative expenses provided for in § 503(b)(1), § 365(d)(3) creates a new and different obligation--one that does not necessarily rest on the administrative expense concept."  In short, section 365(d)(3) does not limit a landlord's remedies for payment of post-petition rent to that section, rather it expands those rights by providing for the timely payment of rent obligations without the need for a landlord to file an administrative claim and seek immediate payment.

Goody's, 392 B.R. at 610-11 (emphasis in original) (citing 2 Shorter Oxford English Dictionary 152 (6th ed. 2007); In re Valley Media, Inc., 290 B.R. 73, 77 (Bankr. D. Del. 2003)).

As discussed above, § 503(b) establishes a burdensome procedure for claiming administrative expenses and proving their necessity.  The term "notwithstanding" within § 365(d)(3)

operates to <u>carve out</u> a subset of administrative expenses --

namely, post-petition rent -- exempting this special class from

the usual burdens and procedures.  <u>See</u> <u>In re Duckwall-ALCO</u>

<u>Stores, Inc.</u>, 150 B.R. 965, 971 n.10 (D. Kan. 1993) ("Lease

obligations under § 365(d)(3) are not subject to requirements of

§ 503 for payment of administrative expenses.").[11]  It also

exempts the amount of rent owed from § 503(b)(1)'s limitation to

the fair value of the debtor's use of the property.  <u>In re</u>

<u>Cukierman</u>, 265 F.3d 846, 850 (9th Cir. 2001).  In other words,

the term "notwithstanding" operates to convey "that irrespective

of whether the payments required under the lease meet the usual

requirements for administrative status, reasonableness and

benefit to the estate, they are unconditionally due.'"  <u>In re</u>

<u>Stone Barn Manhattan LLC</u>, 398 B.R. 359, 367 n.5 (Bankr. S.D.N.Y.

2008) (citing <u>In re Wingspread Corp.</u>, 116 B.R. 915, 926 (Bankr.

S.D.N.Y. 1990)).  Given this interpretation, nothing within the

---

[11] <u>See also</u> <u>In re Paul Harris Stores, Inc.</u>, 148 B.R. 307,
312 (S.D. Ind. 1992) (holding that lessor need not show
post-petition rent is actual and necessary for preserving
estate); <u>In re Telesphere Communications, Inc.</u>, 148 B.R. 525,
530, 531 n.4 (Bankr. N.D. Ill. 1992) (holding that § 365(d)(3)
requires payment without application and without court review);
<u>In re Western Monetary Consultants</u>, 100 B.R. 545, 547 (Bankr. D.
Colo. 1989) (holding that rent payments during first 60 days
post-petition are allowed at contractual rate, without notice and
hearing, and no showing of reasonableness need be made); <u>In re</u>
<u>Coastal Dry Dock & Repair Corp.</u>, 62 B.R. 879, 883 (Bankr.
E.D.N.Y. 1986) (holding that § 365(d)(3) obligation is expressly
independent of normal standards for administrative expense
claims)

statute suggests that rent is _only_ recoverable through the automatic mechanism of § 365(d)(3), or § 365's other subsections.

Indeed, mindful of this interpretation, § 503(b) affirmatively commands that rent must be recoverable under the administrative expense procedure.  Section 503(b) provides, "After notice and a hearing, there _shall be_ allowed administrative expenses . . . including . . . the actual, necessary costs and expenses of preserving the estate . . . ." 11 U.S.C. § 503(b) (emphasis added).  The word "shall" indicates that the command is mandatory.  National Ass'n of Home Builders v. Defenders of Wildlife, 127 S. Ct. 2518, 2531-32 (2007).  The statute proceeds to list exceptions to this command, _e.g._, 11 U.S.C. §§ 503(b)(1)(B), (b)(3)(D), (b)(7), (c), and notably absent from these exclusions is rent for post-petition occupancy and use.  _See_ discussion of _expressio unius_ doctrine, _infra_, at 24-25.  Thus, all actual administrative expenses necessary to preserving the estate are recoverable under § 503(b) unless otherwise excluded.  Post-petition/pre-rejection use and occupancy is not an exclusion.

Finally, the COURT's holding that § 365(d)(3) does not preempt § 503(b) rests comfortably with Montgomery Ward, which considered only the meaning of § 365(d)(3) in isolation.  In that case, the Third Circuit rejected the "proration approach" in favor of the "billing date approach," not as a matter of policy

20

preference, but as an interpretation of the words "obligations .
. . arising under" in § 365(d)(3).  268 F.3d at 208-09.  As to
the questions of whether § 365(d)(3) preempts § 503(b), and
whether prorated rent is recoverable under § 503(b), <u>Montgomery
Ward</u> is inapposite.

        In short, the language and structure of §§ 365 and 503(b)(1)
are unambiguous: When a lease is unenforceable under § 365(d)(3),
but the premises are used to the preserve the debtor's estate
post-petition, § 503(b)(1) creates a mechanism for a landlord's
recovery of rent.

### 2. Legislative History and Supplemental Canons of Statutory Interpretation

        The COURT's reading of §§ 365(d)(3) and 503(b) is also
consistent with the legislative history and supplemental canons
of statutory interpretation.  First, the legislative purpose of §
365(d)(3), as "[v]irtually all courts have agreed," was to
"alleviate the . . . burdens of landlords by requiring timely
compliance with the terms of the lease."  <u>Montgomery Ward</u>, 268
F.3d at 210.

> Prior to 1984, landlords who leased premises to a
> [debtor-in-possession ("DIP") ] sought payment of rent
> and other postpetition charges as administrative
> expenses.  Several factors, however, made collecting
> postpetition lease obligations under § 503 an
> unsatisfactory arrangement.  First, a landlord had to
> comply with the formal and time-consuming procedure of an
> application, notice, and hearing.  Second, a landlord
> could, upon proper proof, only recover the <u>reasonable
> value</u> of the DIP's <u>actual</u> use and occupancy of the
> premises. . . .    Finally, since bankruptcy courts

exercise discretion with respect to the timing of the payment of administrative expenses, the court could delay payment of the amount awarded to the landlord until confirmation of a plan.  The resulting loss of income imposed a heavy economic burden on landlords who were forced to provide ongoing services and space to the estate without receiving timely payment to satisfy their own cash obligations.

Joshua Fruchter, To Bind or Not to Bind -- Bankruptcy Code § 365(d)(3):  Statutory Minefield, 68 Am. Bankr. L.J. 437, 437 (1994) (emphasis in original; footnotes omitted) as quoted in Montgomery Ward, 268 F.3d at 210.  To put it more succinctly, "Congress intended that the debtor in possession perform all the obligations at the time required in the lease."  Montgomery Ward, 268 F.3d at 210.[12]  The House Report for the 1984 Amendments explained the effect of § 365(d)(3) this way: "[C]ourts will have to insure [sic] that the trustee's performance under the contract or lease gives the other contracting party the full benefit of his bargain."  Cherkis & King, 1 Collier on Real Estate Transactions and the Bankruptcy Code, § 3.01[6] (2008) (emphasis

---

[12] See also In re Koenig Sporting Goods, Inc., 203 F.3d 986, 989 (6th Cir. 2000) ("[T]he purpose [of adding § 365(d)(3)] was "to relieve the burden placed on nonresidential real property lessors (or 'landlords') during the period between a tenant's bankruptcy petition and assumption or rejection of a lease." (citing In re Pudgie's Dev. of NY, Inc., 239 B.R. 688, 692 (S.D.N.Y. 1999); 130 Cong. Rec. S8894-95 (daily ed. June 29, 1994) (statement of Sen. Hatch))); In re Stone Barn Manhattan LLC, 398 B.R. 359, 367 (Bankr. S.D.N.Y. 2008) ("Congress intended § 365(d)(3) to nullify the requirement of § 503(b) that a creditor prove benefit to the estate before it can obtain administrative expense status for a post-petition rent claim. That is exactly what § 365(d)(3) states; it applies 'notwithstanding section 503(b)(1) of this title.'").

added).

In spite of this clear legislative purpose, Debtor-Appellants ask the COURT to interpret § 365(d)(3) as a debtor-tenant's weapon to fend off landlords seeking rent owed to them under the lease.  To mount this untenable argument, Debtor-Appellants rely upon two canons of statutory interpretation.

The first canon -- that "specific statutory provisions prevail over more general provisions," In re Combusion Eng'g, Inc., 391 F.3d 190, 237 n.49 (3d Cir. 2005) -- provides little support for their position.  This interpretive canon is most useful when two statutory provisions conflict.  People Against Tax Revenue Mismanagement, Inc. v. County of Leon, 583 So. 2d 1373, 1377 n.5 (Fla. 1991) ("A specific statute always prevails over a general statute to the extent of any irremediable inconsistency.  In effect, the former is construed as an exception to the latter." (emphasis added)).  In such cases, courts sensibly apply the more specifically relevant provision to resolve the conflict.  Here, however, there is no conflict, so the canon does not apply.  Even if there were a conflict, however, this canon does not trump contrary legislative intent.  Chickasaw Nation v. United States, 534 U.S. 84, 94 (2001); see also Vines v. Georgia, 499 S.E.2d 630, 632 (1998) ("For purposes of statutory interpretation, a specific statute will prevail over a general statute, absent any indication of a contrary

<u>legislative intent</u>." (emphasis added)).  As previously discussed, the legislative intent weighs heavily in favor of Landlord-Appellees.

The second canon of statutory interpretation on which Debtor-Appellants rely is the doctrine <u>expressio unius est exclusio alterius</u>, or, the expression of one item excludes another left unmentioned.  Because § 365 is the only section of the Bankruptcy Code addressing the rights of the non-debtor parties to recover rent owed under unexpired commercial leases, the argument goes, the statute should be read to exclude a rent-collection remedy within § 503(b)(1).  (App't Br. 24.)  This argument misapplies the interpretive canon.

First, courts use this canon to imply exclusion only when "it is fair to suppose that Congress considered the unnamed possibility and meant to say no to it."  <u>Barnhart v. Peabody Coal Co.</u>, 537 U.S. 149, 168 (2003).  Nothing within the legislative history supports a finding that Congress intended to exclude rent recovery under § 503(b)(1); indeed, the result Debtor-Appellants advocates is antithetical to the legislative intent.  <u>See</u> discussion <u>supra</u>.  Second, this canon applies only in the presence of the "essential extrastatutory ingredient of an expression-exclusion demonstration," <u>Chevron U.S.A. Inc. v. Echazabal</u>, 536 U.S. 73, 81 (2002), that is, when "that which is expressed is so set over by way of strong contrast to that which

24

is omitted that the contrast enforces the affirmative inference,"
E. Crawford, Construction of Statutes 337 (1940), <u>as quoted in</u>
<u>Chevron</u>, 536 U.S. at 81.  No such "expression-exclusion
demonstration" appears in § 365, however.  The mere fact that §
365 is specific to fulfilment of lease obligations, while §
503(b)(1) is not, is insufficient to trigger this interpretive
canon.  If anything, the canon cuts in Landlord-Appellees' favor
inasmuch as rent-collection is not listed among (and might thus
be construed as being omitted from) the enumerated exclusions to
§ 503(b).  <u>See, e.g.</u>, 11 U.S.C. §§ 503(b)(1)(B), (b)(3)(D),
(b)(7), (c).

In short, § 365(d)(3) embodies the legislative determination
that commercial debtor-tenants should continue to pay rent when
they declare bankruptcy -- the principle of current payment for
current services.  Nothing within the text of § 365, the
legislative history, or other canons of interpretation, bars the
collection of post-petition rent through the administrative
expense procedure of § 503(b)(1).

**C. Applicability of § 503(b)(1)**

Having found that § 365 does not preempt § 503(b)(1), the
COURT now turns to whether Landlord-Appellees have a proper claim
for administrative expenses under § 503(b)(1).

**1. Post-Petition Transaction**

Section 503(b)(1) grants administrative expense priority for

"the actual, necessary costs and expenses of preserving the estate . . . ." 11 U.S.C. § 501(b)(1)(A). Although not founded in the text of § 503(b), courts have generally held that administrative expense claims must "arise from a transaction with the debtor-in-possession . . . ." In re O'Brien Environmental Energy, Inc., 181 F.3d 527, 532-33 (3d Cir. 1999) (citing In re Mammoth Mart, Inc., 536 F.2d 950, 954 (1st Cir. 1976)). On this basis, Debtor-Appellants contend that for a claimant-creditor to recover an administrative expense, the transaction between the debtor and the claimant-creditor must have occurred post-petition. Since the "transaction" here -- namely, the payment of rent[13] -- was due to occur eight days before the Petition Date, Debtor-Appellants maintain that stub rent is not recoverable as an administrative expense.

Debtor-Appellants construe the transaction requirement too narrowly. To be eligible for administrative expense priority, a

---

[13] It is unclear why, in Debtor-Appellants' view, the rent due-date should be considered the relevant "transaction." Debtor-Appellants seem to rely upon the confounding assumption that a tenant's performance of the lease (the payment of rent), but not a landlord's performance (the tenant's undisturbed occupancy), is a "transaction" triggering § 503(b)(1). Under the narrow view proposed by Debtor-Appellants, however, mere performance of a contract is not a transaction at all; thus, the only real transaction giving rise to a tenancy would be formation of the lease agreement. However, if formation of the lease is the relevant transaction, then rent would be recoverable under § 503(b)(1) only if the debtor formed a new lease post-petition. For the reasons set forth below, this consequence is inconsistent with the purposes and widespread application of the administrative expense procedure.

post-petition transaction need not involve the exchange of money
or formation of a contract.  See Black's Law Dictionary 212, 1535
(8th ed. 2004) (defining "transaction" and "business
transaction").  Indeed, a claimant's performance of a pre-
petition contract, and a debtor's acceptance of that performance,
can establish a post-petition transaction.  In re White Motor
Corp., 831 F.2d 106, 110 (6th Cir. 1987) (including the provision
of consideration within the definition of a post-petition
transaction).  Here, at least two bases support a finding of a
post-petition transaction: Debtor-Appellants' post-petition
decision to occupy and use Landlord-Appellees' property, or
alternatively, Debtor-Appellants' post-petition acceptance of
Landlord-Appellees' performance of the lease agreement.  The
latter basis views performance of a pre-petition contract to be
sufficient to establish a post-petition transaction; the former
basis treats a debtor's decision to occupy and use property as an
independent post-petition transaction, separate and apart from
the lease.  Regardless of which basis the COURT uses, the weight
of authority clearly supports permitting administrative expense
claims for post-petition rent on pre-petition leases.  See In re
Dant & Russell, Inc., 853 F.2d 700, 707 (9th Cir. 1988)
("Ordinarily, any claim arising during this interim period would
be treated as prepetition, however, where the 'trustee actually
uses the leased property, the law is clear that the rent incurred

is an allowable administrative expense.'" (quoting 2 Collier on

Bankruptcy ¶ 365.08 (15th ed. 1986))).[14]

The COURT faithfully applies the longstanding and widespread

application of the administrative expense procedure.  Although

courts, including the Third Circuit in O'Brien, have often quoted

the seemingly rigid "transaction" language of the First Circuit

case In re Mammoth Mart, Inc., 536 F.2d 950, 954 (1st Cir. 1976),

those courts have not understood the Mammoth Mart rule to be as

narrow as Debtor-Appellants suggest.  See, e.g., In re

Subscription Television of Greater Atlanta, 789 F.2d 1530 (11th

Cir. 1986) (allowing administrative expense claims for "that

---

[14] Obviously, "[a] claim is not entitled to priority simply because the right to payment arises after the debtor-in-possession is in place." In re Philadelphia Mortgage Trust, 117 B.R. 820, 828 (Bankr. E.D. Pa. 1990) (emphasis added). However, a strict rule that transactions initiated pre-petition can never give rise to administrative expense claims does not serve the purposes of § 503(b)(1).  Because administrative expense priority exists to preserve the estate post-petition, Zagata Fabricators, Inc. v. Superior Air Products, 893 F.2d 624, 627 (3d Cir. 1990), the relevant factor is not when the agreement was formed, but when the services necessary to the preservation of the estate were rendered.  See In re Indiana Walnut Products, Inc., 136 B.R. 522, 524 (Brankr. N.D. Ind. 1991).  In other words, at least insofar as property leases are concerned, it is performance of the contract, not the date the parties contracted, that gives rise to an administrative expense claim.
   The alternative approach cannot be reconciled with the purpose of § 503(b)(1).  According to Debtor-Appellants, a debtor could avoid administrative expense claims by contracting for a variety of services normally considered necessary to the preservation of the estate the day before filing a bankruptcy petition.  Under this scenario, the service-providers would either perform services that are necessary to preserve the estate without priority payment, or, knowing that they may never receive payment, would not perform at all.

which is actually utilized . . . in the operation of a debtor's business"); In re Braniff Airways, Inc., 783 F.2d 1283 (5th Cir. 1986) (recognizing an administrative expense claim where the trustee rejects a pre-petition lease).  Indeed, Mammoth Mart itself held that, "When third parties are induced to supply goods or services to the debtor-in-possession pursuant to a [pre-petition] contract that has not been rejected, the purposes of [§ 503(b)(1)] plainly require that their claims be afforded priority."  536 F.2d at 954.[15]  On this basis, the COURT holds that, to the extent that a post-petition transaction is an administrative expense claim's predicate condition, Landlord-Appellees can establish one here.

### 2. Actual and Necessary Expense

Having held that a landlord's claim for stub rent is appropriate under § 503(b)(1) generally, the COURT now addresses whether the Bankruptcy Court below properly granted administrative expense priority in this case.  Debtor-Appellants aver that their post-petition use and occupancy of the leased premises did not give rise to an actual expense that was

---

[15] This approach is consistent with the traditional application of § 503(b)(1), which, before the addition of § 365, granted administrative expense priority, on a prorated basis, for post-petition rent.  In re All for A Dollar, Inc., 174 B.R. 358, 360 (Bankr. D. Mass. 1994) (citing In re J. Bain, Inc., 554 F.2d 255 (5th Cir. 1977); In re Lackow Brothers, Inc., 18 B.R. 770, 772 (Bankr. S.D. Fla. 1982); In re Keyboard Center, Inc., 9 B.R. 475, 475 (Bankr. W.D. La. 1981)).

necessary to preserve the estate.   The COURT disagrees.

### a. Actual Expense

Debtor-Appellants contend that their occupancy of the leased premises was not an "actual" expense, because their only real expense (that is, the rent) arose on the pre-petition due date. In other words, Debtor-Appellants never incurred an <u>actual</u> expense for 21 days of rent, since the lease does not provide for the landlord's entitlement to payment on a prorated basis.   The Bankruptcy Court therefore constructed a "legal fiction" of a rent obligation that arises daily, Debtor-Appellants argue, from which the Bankruptcy Court derived the theoretical, not "actual", prorated rent expense at issue here.   (App't Br. 34-35.)

Contrary to Debtor-Appellants' argument, the lease is not the conclusive arbiter of whether an expense is "actual". Reliance upon the terms of a lease to define a tenant's payment obligations may be warranted in a § 365 analysis, <u>see</u> <u>Montgomery</u> <u>Ward</u>, 268 F.3d at 209 (requiring "perform[ance of] the lease in accordance with its terms"), but not necessarily for a § 503(b)(1) administrative expense claim.[16]   Certainly, had Landlord-Appellees invoiced Debtor-Appellants (as any other

_____

[16] This is especially true here, as Landlord-Appellees' claim arises not from the lease, but from Debtor-Appellants' actual occupancy and use of the property.   <u>See</u> discussion <u>supra</u> at 6 ("[A]n administrative expense claim for unpaid rent does not seek enforcement of the lease as a breached contract; rather, such a claim seeks recovery for actual occupancy and use . . . .").

service-provider would) for the unpaid stub rent, Debtor-
Appellants would clearly have incurred an <u>actual</u> post-petition
administrative expense.  Thus, Debtor-Appellants' argument
ultimately hangs upon the unremarkable failure of Landlord-
Appellees to send them a bill, post-petition, for the 21 days'
use of its premises.

As the Bankruptcy Court did, this COURT, too, construes
Landlord-Appellees' administrative expense claim itself as a
demand that Debtor-Appellants pay the stub rent.  Thus, insofar
as Landlord-Appellees demanded payment for 21 days' use of their
premises, the expense is "actual."[17]

### b. Necessary to Preservation of the Estate

Debtor-Appellants next contend that their occupancy of the
leased premises was not a "necessary" expense.  The COURT rejects
this position.  When a debtor uses a landlord's premises for its
post-petition business, this will ordinarily satisfy the
requirement that the use be "necessary."  <u>Zagata</u>, 893 F.2d at 627
("There is no question, of course, that the payment of rent for
the use and occupancy of real estate ordinarily counts as an

---

[17] Of course, the COURT's finding of a § 503(b)(1) actual
expense for stub rent is consistent with the longstanding and
widespread practice of awarding rent, on a prorated basis, for
post-petition use and occupancy of leased property.  <u>In re All
for A Dollar, Inc.</u>, 174 B.R. 358, 360 (Bankr. D. Mass. 1994).
This undoubtedly accounts for Debtor-Appellants' failure, in
light of the dozens of cases awarding rent as an administrative
expense, to cite a single authority adopting their position.

'actual, necessary' cost to which a landlord, as a creditor, is

entitled." (citing <u>Philadelphia Co. v. Dipple</u>, 312 U.S. 168

(1941); <u>In re 48th Street Steakhouse, Inc.</u>, 61 B.R. 182 (Bankr.

S.D.N.Y. 1986))).[18]  During the full stub rent period here, not

only did Debtor-Appellants use Landlord-Appellees' premises to

conduct normal business; they also rented the premises to a

liquidator to conduct profitable store-closing sales.  (Oral Arg.

Tr. at 87, 89; App'e Br. 41; Sept. 22, 2008 Hearing Tr. at 11, 18

(GFC573, 580) [Docket No. 15, App'x Pt. 12].)  This fact is

sufficient to establish the necessity of Debtor-Appellants' use

of the premises.[19]  Here, there is no ambiguity as to whether

---

[18] <u>See also</u> <u>In re Garden Ridge Corp.</u>, 321 B.R. 669 (Bankr.
D. Del. 2005) ("The claimant need not prove that the property was
put to its highest and best use; instead, the claimant need only
show that the property was actually used by the debtor in the
ordinary course of business.").
    Debtor-Appellants attempt to distinguish <u>Zagata</u> on its
facts.  The distinguishing facts, however, are irrelevant to the
more general proposition for which the COURT cites <u>Zagata</u>.
Furthermore, the fact that <u>Zagata</u> predates <u>Montgomery Ward</u> is
inapposite, since <u>Montgomery Ward</u> interpreted § 365(d)(3), not §
503(b)(1).

[19] Debtor-Appellants urge the COURT to remand because the
Bankruptcy Court, they aver, never made a finding of fact as to
the necessity of their occupancy and use of Landlord-Appellees'
property.  The Bankruptcy Court's citation to <u>Zagata</u>, however,
was tantamount to a finding that Debtor-Appellants' use of the
properties was necessary to preserve the estate.  <u>See</u> <u>Goodies</u>,
392 B.R. at 614 ("[T]he mere fact that the Debtors are occupying
the Landlords' premises is sufficient, in and of itself, to
establish that payment for that use and occupancy is an actual,
necessary expense of preserving the Debtors' estates under
section 503(b)(1).").  Indeed, transcripts from the proceedings
before the Bankruptcy Court reveal that it did consider the
matter of necessity, (Sept. 22, 2008 Hearing Tr. at 19-20, 31

Debtor-Appellants genuinely occupied and used the premises; for the 21 days at issue here, these were clearly "lights-on" leases. Had Debtor-Appellants vacated, or merely left idle, the premises -- a "lights out" lease -- Landlord-Appellees would be faced with a more difficult claim.  On this basis, the COURT holds that the Bankruptcy Court's § 503(b)(1) administrative expense allowance for stub rent was proper here.

**IV. Conclusion**

    The COURT need not, and indeed does not, rest upon the balance of equities in its resolution of this appeal.  The COURT notes, however, that the equities weigh heavily in Landlord-Appellees' favor.  Section 503(b)(1) embodies the legislative determination that providers of services necessary to preserve the debtor's estate are entitled to priority compensation to protect both the estate's survival and the financial interests of

---

(GFC581-82, 593) [Docket No. 15, App'x Pt. 12] ("I think that the debtor's use and occupancy of the premises, and . . . conducting business in the locations at issue during the stub-rent period, in and of itself, provides that it's a[n actual] and necessary expense for the estate . . . .")), and that Debtor-Appellants failed to present evidence before the Bankruptcy Court to rebut the strong presumption that occupancy and use establishes necessity, Zaqata, 893 F.2d at 627, as well as the presumption that the rental-rate reflected in the lease represents fair market value.  Indeed, Debtor-Appellants have admitted that they used the three properties at issue here throughout the stub rent period, and held profitable store-closing sales during that period.  (Oral Arg. Tr. at 24, 31-32; Sept. 22, 2008 Hearing Tr. at 11, 18 (GFC573, 580) [Docket No. 15, App'x Pt. 12].)  For this reason, the COURT declines Debtor-Appellants' invitation to remand the case to the Bankruptcy Court for a finding that the expense at issue here was "actual" and "necessary."

all creditors.   Section 365(d)(3) embodies the legislative
determination that landlords should continue collecting rent,
even after a debtor-tenant has filed for bankruptcy.   The COURT
cannot understand how these two statutory provisions, taken
together, should shield debtor-tenants from paying rent in the
days and weeks immediately following their bankruptcy filing --
perhaps the time most critical to preservation of the estate.

     For the reasons stated herein, the decision of the
Bankruptcy Court below is affirmed.   An appropriate ORDER will
issue this date.

                                   s/Renée Marie Bumb
                                   RENÉE MARIE BUMB
                                   United States District Judge

Dated: March 31, 2009